Filed 10/22/14  In re B.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re B.H., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D065952 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3780) |
| v. | |
| JOHN H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

William Hooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

John H. appeals findings and orders adjudicating his daughter, B.H., a dependent of the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (b), and removing her from his custody under section 361, subdivision (c)(1). John also challenges an order for supervised visitation. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

B.H., who is now eight years old, is the daughter of John H. and Amy B. In May 2014, B.H. was adjudicated a dependent of the juvenile court under section 300, subdivision (b). The court removed B.H. from John's custody, denied Amy's request for placement, placed B.H. in the care of her paternal grandfather, and ordered the Agency to provide reunification services to John and Amy, including supervised visitation services.

In making its rulings, the court considered the following evidence: The San Diego County Health and Human Services Agency (Agency) reported that John had legal and physical custody of B.H. since she was two years old. Amy had limited contact with B.H. because of her mental health and substance abuse issues, which included a history of addiction to methamphetamine and pain pills. From B.H.'s birth through 2013, there were 21 child welfare referrals for general neglect, emotional abuse, physical abuse, sexual abuse and caretaker absence. Three of those referrals were substantiated: in 2013, emotional abuse by Amy; in 2008, substantial risk of severe neglect by Amy; and in 2007, substantial risk of emotional abuse by John. There were no prior dependency proceedings on B.H.'s behalf.

---

[1]     Further statutory references are to the Welfare and Institutions Code.

In January 2014, John was arrested on charges of domestic violence against his girlfriend while she was holding her one-year-old daughter. When he was arrested, John, who was intoxicated, displayed erratic behaviors. He screamed and called out for B.H., who was sleeping. She awoke, screaming "Daddy." John said, "Watch this, they're going to kill me, they're going to shoot me with the Taser." Again, B.H. screamed, "Daddy." Police referred the matter to child protective services.

John did not cooperate with the social worker. He missed his first two appointments with her. John denied current drug use and said he only drank socially. He refused to consult a substance abuse specialist or submit to a drug test. John refused to sign a safety plan to protect B.H. He did not allow the social worker to interview B.H. alone.

In March 2014, the Agency detained B.H. in protective custody after she disclosed she was sexually molested in her home by a man named Kyle while her father was at a store. She told her maternal grandmother that Kyle made her watch a pornographic movie and touch his erect penis with her hand. He licked her vagina. Kyle attempted to insert his penis into her vagina but it "didn't fit." He was "humping" her and it hurt.

John said he was helping Kyle by letting him sleep at his house for a few nights. He said Kyle recently had been released from jail on charges of bank robbery.

B.H. said she did not disclose the sexual assault to her father, saying ". . . I'm scared to tell him because I don't know what his mood is going to be like when I tell him. He will probably not believe that because he knows Kyle is a good guy and I don't know

that." B.H. was comfortable talking to her maternal grandmother about the sexual assault because her grandmother was never angry with her.

John's family expressed concern about recent changes in his behavior, attributing the changes to possible substance abuse. His sister said John had become "angry and abusive." B.H.'s maternal grandmother said John was obviously intoxicated when he drove B.H. to her home on March 2. When he opened the door to his vehicle, the smell of liquor was overwhelming. A detective investigating the sexual assault believed that John was under the influence of drugs during an interview and that he displayed symptoms of chronic methamphetamine use.

John acknowledged using marijuana on a daily basis for approximately 14 years. His alcohol use had increased after he suffered a work-related injury eight months earlier. John said he used methamphetamine with Amy "a long, long time ago," after B.H. was born. He was charged with driving under the influence of alcohol or drugs (DUI) in 2009, 2013 and 2014. John continued to refuse to drug test or participate in a substance abuse treatment program.

B.H. was happy with her paternal grandparents and felt safe in their home. She said she was staying with her grandparents because her father had been drinking beer, doing drugs and smoking marijuana. B.H. was aware of her father's marijuana use. He tried to hide it from her but she could smell it. She said she felt 90 percent safe with her dad. He needed to stop drinking and smoking marijuana to be 100 percent safe. During visits, B.H. ran to greet her father and was happy to see him.

4

The court accepted John's stipulated testimony he was attending 12-step meetings. A list of the meetings he attended was attached to the social worker's report. The court also accepted the stipulated testimony of the paternal grandfather that B.H. and John's visits were loving and appropriate. Although the grandfather stood by his previous statement expressing concern about John's drug use and need for treatment, he did not suspect John of being under the influence of alcohol or drugs at any of his visits with B.H.

John argued he could not reasonably have known that Kyle would sexually abuse his daughter. He left the home for approximately ten minutes. John cooperated with the detective and provided information to help identify Kyle. Kyle was likely to be incarcerated for a long time and did not present any risk to B.H. John had pulled himself together and his relationship with B.H. was loving and appropriate. B.H. felt safe in her father's care. John argued there were no current grounds to support dependency jurisdiction. Alternatively, he argued B.H. should not be removed from his care or if removed, the court should allow unsupervised visitation.

After sustaining the petition and removing B.H. from John's care, the court emphasized one factual finding. The court found that John was negligent in allowing a strange man who was recently released from jail to stay at his home with his daughter. Whether the sexual assault was or was not foreseeable, John's drinking and drug use clouded his judgment. The court advised John to "sober up."

5

DISCUSSION

A

*There Is Substantial Evidence to Support the Jurisdictional Findings*

At the time of the jurisdiction hearing, the juvenile court considers only the question whether the child is described by one or more subdivisions in section 300. Under section 300, subdivision (b), the Agency must show that the parent's neglectful conduct has caused the child to suffer serious physical harm or illness, or creates a substantial risk that the child will suffer serious physical harm or illness. (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 820.) The Agency has the burden of proving by a preponderance of the evidence that the child is a person described by section 300. (§ 355, subd. (a).)

Here, the Agency filed a two-count petition under section 300, subdivision (b), alleging B.H. had suffered, or there was substantial risk she would suffer, serious physical harm or illness as a result of John's inability to adequately supervise her. In count 1, the Agency alleged that between January and March 2014, John exposed B.H. to his drinking and marijuana use and domestic violence, and allowed a transient to stay in his home, who then sexually assaulted B.H. In count 2, the Agency alleged John was unable to provide regular care to B.H. From May 2013 to the present, John used narcotics and/or alcohol and marijuana to excess. He was arrested for driving under the influence in 2009, 2013 and 2014. In addition, Amy had a history of substance abuse and was not able to adequately protect and supervise her daughter.

John contends the jurisdictional findings are not supported by substantial evidence. He characterizes his alcohol and marijuana use as "occasional" and argues it did not present a danger to B.H.'s safety. He states his daughter was not present during the isolated incident of domestic violence and was therefore not at risk. John also contends there is nothing in the record to show he knew or reasonably should have known that his houseguest would sexually assault B.H. He argues this case is similar to *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1397 (*Savannah M.*), in which this court reversed a jurisdictional finding that the parents negligently failed to protect their baby girl from sexual abuse by a family friend.

In reviewing the juvenile court's findings for substantial evidence, we do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. The appellant has the burden to show there is no evidence of a sufficiently substantial nature to support the findings or orders. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

John's factual assertions are not supported by the record. The record shows that John had a significant substance abuse problem that prevented him from providing adequate care and supervision to B.H. He had three DUIs, the last while he was still on probation for the previous one. In March 2014, he was intoxicated when he drove B.H. to her grandmother's house. This in and of itself placed B.H. at substantial risk of serious physical harm. In addition, John was intoxicated when he assaulted his girlfriend. He was intoxicated when he yelled for B.H. to watch his arrest because the police were going to kill him. John denied having any substance abuse problem and refused to undergo an

7

evaluation, submit to a drug test or voluntarily participate in substance abuse treatment. He smoked marijuana daily and asserted he would resume using marijuana as soon as the dependency case was over. Contrary to his assertion there was no current risk of harm at the time of the jurisdiction hearing, the juvenile court could reasonably conclude that John's substance abuse, with its attendant risk of harm to B.H., was likely to continue.

We are not persuaded by John's argument this case is similar to *Savannah M*. In that case, the juvenile court determined the parents were negligent in failing to protect their daughter from sexual abuse by a trusted friend. (*Savannah M*., *supra*, 131 Cal.App.4th at p. 1395.) This court reversed the jurisdictional findings, concluding there was insufficient evidence to show that the child was at substantial risk of future serious physical harm based on her parents' conduct. (*Id*. at p. 1396.) The parents immediately notified the police, requested counseling, parenting classes and in-home services, and said they would never again trust anyone to care for their children. (*Id*. at p. 1391.) Although the parents had been drinking that evening, the record did not show they had substance abuse problems, a history of child abuse referrals, or any criminal convictions. (*Id*. at pp. 1390-1392.) They had known the perpetrator, who was the father of seven children, for two years. There is nothing in that case to indicate the perpetrator had a criminal record or if he did, that the parents were aware of it. (*Ibid*.)

Here, the issue is not whether Kyle's sexual abuse of B.H. was reasonably foreseeable, but whether John's judgment with respect to his daughter's physical safety and well-being was impaired. The court reasonably found that John's exercised poor judgment when he allowed B.H. to be alone with a stranger who had a criminal record.

8

This incident, which resulted in serious physical harm to B.H., was merely one of a number of incidents that resulted from John's substance abuse and impaired judgment and placed B.H. at substantial risk of serious physical harm. These incidents included engaging in domestic violence, traumatizing B.H. by telling her police were going to kill him, driving while intoxicated with B.H. in the vehicle, and exposing B.H. to his marijuana use. John denied he had a substance abuse problem and refused treatment. Thus, at the time of the jurisdictional hearing, the record supports findings that B.H. had been seriously harmed by her father's inability to provide regular care and that there was a substantial risk of future harm. (S*avannah M*., *supra*, 131 Cal.App.4th at p. 1396.) We conclude there is ample evidence to support the jurisdictional findings under section 300, subdivision (b).

B

*There Is Substantial Evidence to Support the Dispositional Findings and Orders*

John argues there is not substantial evidence to support the court's decision to remove B.H. from his custody. He acknowledges he was "often uncooperative" and refused to speak with social workers, submit to a drug test or participate in services. However, he posits he was honest about his alcohol and marijuana use, cooperated with the police in its sexual assault investigation, and asserts there was no risk to B.H. from domestic violence. John also relies on B.H.'s statement she felt safe with him and wanted to return to his care.

A dependent child may not be taken from the physical custody of his or her parent unless the court finds that one or more subdivisions of section 361, subdivision (c) apply.

9

Section 361, subdivision (c)(1) requires a finding, by clear and convincing evidence, there is or will be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if the child were returned home, and there are no reasonable means to protect the child's physical health without removing the child from the physical custody of his or her parent.

In reviewing the court's findings and orders under section 361, subdivision (c), we employ the substantial evidence test, bearing in mind, however, the heightened burden of proof. (*In re Kristen H.* (1996) 46 Cal.App.4th 1635, 1654.)

As discussed, there is ample evidence there is or will be a substantial danger to B.H.'s safety, protection and well-being in John's care. The Legislature states, "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection, and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Here, the record shows that the home environment was not yet safe for B.H. Although B.H. was happy to see her father and said she felt safe in his care, the juvenile court may rely on objective factors and disregard a child's assessment of his or her safety with a parent. John's history of substance abuse in the home, his significantly impaired judgment, and his lack of amenability to treatment, supports the finding there are no reasonable means to protect B.H.'s physical health without removing her from his custody. (§ 361, subd. (c)(1).)

C

*The Court Did Not Abuse Its Discretion When It Ordered Supervised Visitation*

John contends the court abused its discretion when it ordered a plan of supervised visitation because by the time of the dispositional hearing, he had demonstrated that his visits with B.H. were appropriate and loving, and there were no concerns about his sobriety.

To maintain ties between the parent and child, any order placing a child in foster care, and ordering reunification services, shall provide for visitation between the parent and the child.  Visitation shall be as frequent as possible, consistent with the well-being of the child.  (§ 362.1, subd. (a)(1)(A).)  Visitation between parent and child is an essential component of a reunification clan.  (*In re Nicholas B*. (2001) 88 Cal.App.4th 1126, 1138.)  Limitations on visitation "may not exceed those necessary to protect a child."  (§ 361, subd. (a)(1).)

The juvenile court has broad discretion to fashion an appropriate visitation order.  The court's visitation order will not be reversed unless the appellant shows that the court abused its discretion.  (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.)

John does not show the juvenile court abused its discretion when it imposed an initial requirement for supervision on visits.[2]  John had yet to acknowledge that he had a substance abuse problem or engage in services.  He acknowledges he was often

---

[2]    The court also authorized the Agency to lift supervision requirements and allow overnight visitation on notice to minor's counsel, and begin a 60-day in-home visit with minor counsel's concurrence.

11

uncooperative with social workers. At B.H.'s birthday party, he ignored a court order restricting his contact with B.H.'s mother. The record does not show he recognized that his judgment about his daughter's safety, protection and physical and emotional well-being was significantly impaired by his untreated substance abuse. The court reasonably exercised its discretion when it ordered supervised visitation.

## DISPOSITION

We affirm the findings and orders of the juvenile court.


                                                        HUFFMAN, Acting P. J.

WE CONCUR:


              NARES, J.


              AARON, J.


12